**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| LLOYD TRAHAN, Individually and for Others Similarly Situated | **Case No. 1:26-cv-1595** |
| v. | Jury Trial Demanded |
| VENTURE GLOBAL LNG, INC. and ALLIANCE INDUSTRIAL GROUP LLC | FLSA Collective Action |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Lloyd Trahan (Trahan) brings this collective action to recover unpaid wages and other damages from Venture Global LNG, Inc. (Venture Global) and Alliance Industrial Group, LLC (Alliance) (collectively Defendants).

2.      Defendants employed Trahan as one of their Hourly Employees (defined below) in Port Sulphur, Louisiana.

3.      Trahan and the other Hourly Employees regularly work more than 40 hours a week.

4.      But Defendants do not pay them for all hours worked.

5.      Instead, Defendants automatically rounds their punch in and punch out times to reflect only these employees' scheduled shifts, despite regularly working beyond their scheduled shifts, for their own primary benefit and to the detriment of Trahan and the other Hourly Employees (Defendants' "rounding policy").

6.      Additionally, Defendants do not pay Trahan and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours over 40 in a week.

7. Instead, Defendants pay Trahan and the other Hourly Employees non-discretionary bonuses, including safety bonuses, that Defendants exclude from these employees' regular rates of pay for overtime purposes (Defendant's "bonus pay scheme").

8. Defendants' rounding policy and bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Trahan and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek.

### JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court has personal jurisdiction over Defendants based on their substantial contacts with and business done in Virginia, including work and communications relating to their joint work on the Plaquemines Parish LNG facility, and registering to do business, hiring and employing numerous employees, and maintaining offices in Virginia.

11. Venue is proper because Venture Global maintains its principal place of business in Arlington, Virginia, which is in this District and Division. 28 U.S.C. § 1391(b).

### PARTIES

12. Defendants employed Trahan as a millwright from approximately September 2024 until January 2025.

13. Throughout his employment, Defendants paid Trahan under their rounding policy and bonus pay scheme.

14. Trahan's written consents are attached as **Exhibit 1**.

15. Trahan brings this collective action on behalf of himself and similarly situated employees employed by Defendants.

16. The putative FLSA collective is defined as:

**All hourly employees who worked for Defendants in Louisiana and were paid under their rounding policy and/or bonus pay scheme during the last three years through final resolution of this action (the "Hourly Employees").**

17.    Alliance is a Texas limited liability company with its principal place of business in Lumberton, Texas.

18.    Alliance may be served with process by serving its registered agent: **Thomas Christopher Griffith, 570 North LHS Drive, Lumberton, Texas 77657**, or wherever he may be found.

19.    Venture Global is a Delaware corporation with its principal place of business in Arlington, Virginia.

20.    Venture Global may be served with process by serving its registered agent: **C T Corporation System, 4701 Cox Rd., Ste. 285, Glen Allen, Virginia 23060.**

21.    Alliance and Venture Global jointly imposed common policies and practices on the Hourly Employees, for example, by jointly deciding and controlling the Hourly Employees' compensation practices, including safety requirements and policies, as well as the bonus pay scheme.

22.    Alliance appeared on Trahan's pay checks.

23.    Venture Global, together with Alliance, directed Trahan as to where in its facility he was required to perform his work, provided the paperwork on which Defendants required Trahan to document the work he performed, and required Trahan to turn his completed paperwork in to Venture Global management.

24.    And Alliance provided various administrative and HR functions, such as benefits administration.

## FLSA COVERAGE

25. At all relevant times, Defendants were "employers" within the meaning of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, Defendants were "enterprises" within the meaning of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, Defendants were "enterprise[s] engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because they had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

28. At all relevant times, Defendants each had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29. At all relevant times, Trahan and the other Hourly Employees were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30. At all relevant times, Trahan and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

<strong>FACTS</strong>

31. Alliance "is a Specialized Turnkey EPC Contractor with a focus on Capital Projects, Maintenance Services, TAR Management and Execution, Mechanical and Specialty Welding Work, as well as Fabrication and Civil Construction."[1]

---

[1] https://allianceindustrialgroup.com/ (last visited May 29, 2026).

32.     Venture Global holds itself out as a "low-cost provider of American-produced liquefied natural gas … [with] four Louisiana-based export projects service[ing] the global demand for North American natural gas."[2]

33.     Venture Global contracted with Alliance, which works with Venture Global to secure labor to complete and bring on line Venture Global's Port Sulfur, Louisiana liquified natural gas facility.

34.     To meet this shared business objective, Defendants employ workers, including Trahan and the other Hourly Employees.

35.     For example, Defendants employed Trahan as a pipefitter in Port Sulphur from approximately September 2024 until January 2025.

36.     Trahan's job duties included stress testing fire/water pipes and compressor pipes in the facility.

37.     Throughout his employment, Trahan has regularly worked more than 40 hours in a workweek.

38.     Indeed, Trahan typically worked approximately 10 hours a day and 7 days a week "on the clock" (70 hours a workweek).

39.     Defendants paid Trahan approximately $42 an hour.

40.     Likewise, the other Hourly Employees typically worked approximately 10 hours a day and 7 days a week (70 hours a workweek).

41.     And Defendants record Trahan's and the other Hourly Employees' "on the clock" hours through their timekeeping system.

---

[2] https://ventureglobal.com/about-us/ (last visited June 3, 2026).

42. At the end of each pay period, Trahan and the other Hourly Employees receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

43. But Defendants do not pay Trahan and the other Hourly Employees for all hours worked.

44. Instead, Defendants impose their rounding policy on Trahan and the other Hourly Employees.

45. Specifically, Defendants automatically round Trahan's and its other Hourly Employees' clock in and clock out times to reflect only their prescheduled shifts, despite these employees regularly working beyond their prescheduled shifts, for their own primary benefit and to the detriment of the Hourly Employees.

46. For example, Defendants typically scheduled Trahan to work a 10-hour shift.

47. And Defendants only paid Trahan for 10 hours a workday, even when Trahan regularly worked beyond his 10-hour shift.

48. Additionally, Defendants do not pay Trahan and the other Hourly Employees at the required overtime rates for all hours worked in excess of 40 a workweek.

49. Instead, Defendants pay Trahan and the other Hourly Employees under its bonus pay scheme.

50. Specifically, Defendants agreed to pay and subsequently paid Trahan and the other Hourly Employees non-discretionary bonuses, including safety bonuses, if they fulfill Defendants' criteria.

51. But Defendants excluded these non-discretionary bonuses from Trahan's and the other Hourly Employees' regular rates of pay for overtime purposes.

52.    For example, Defendants paid Trahan a safety bonus equal to $1 for every hour he worked, if Defendants' safety criteria were satisfied.

53.    But Defendants excluded this non-discretionary bonus from his regular rate of pay for overtime purposes during workweeks in which he earned the safety bonus and worked in excess of 40 hours.

54.    Defendants therefore violate the FLSA by failing to pay Trahan and the other Hourly Employees overtime wages of at least 1.5 times their true regular rates of pay for hours worked in excess of 40 in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

55.    Trahan brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

56.    Like Trahan, the other Hourly Employees are victimized by Defendants' rounding policy and/or bonus pay scheme.

57.    Other Hourly Employees worked with Trahan and indicated they were paid in the same or similar manner under Defendants' rounding policy and/or bonus pay scheme.

58.    Based on his experience with Defendants, Trahan is aware their shared rounding policy and bonus pay scheme was imposed on other Hourly Employees.

59.    The Hourly Employees are similarly situated in the most relevant respects.

60.    Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

61.    Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

62. Rather, Defendants' joint rounding policy and bonus pay scheme render Trahan and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rates for all overtime hours worked.

63. Defendants' records reflect the number of hours it recorded the Hourly Employees working "on the clock" each week.

64. Defendants' records show they automatically rounded the Hourly Employees' hours to reflect only their prescheduled shifts, even when the Hourly Employees worked beyond their prescheduled shifts, for their own primary benefit.

65. Defendants' records also show they paid the Hourly Employees non-discretionary bonuses excluded from these employees' regular rates of pay for overtime purposes.

66. The back wages owed to Trahan and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

67. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

68. Therefore, the issue of damages does not preclude collective treatment.

69. Trahan's experiences are therefore typical of the experiences of the other Hourly Employees.

70. Trahan has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

71. Trahan has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal law.

72. Trahan and his counsel will fairly and adequately protect the interests of the Hourly Employees.

73. Trahan retained counsel with significant experience in handling complex collective action litigation.

74. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating the FLSA.

75. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

76. The multiplicity of actions would create hardship for the Hourly Employees, the Court, and Defendants.

77. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

78. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

79. Among the common questions of law and fact are:

    a. Whether Defendants automatically rounded the Hourly Employees' hours for its primary benefit;

    b. Whether Defendants paid the Hourly Employees non-discretionary bonuses;

    c. Whether Defendants failed to include the non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

    d. Whether Defendants failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for overtime hours;

    e.      Whether Defendants' decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

    f.      Whether Defendants' violations were willful.

80.    As part of its regular business practices, Defendants intentionally, willfully, and repeatedly violated the FLSA with respect to Trahan and the other Hourly Employees.

81.    Defendants' rounding policy and bonus pay scheme deprived Trahan and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—they are owed under federal law.

82.    There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

83.    The Hourly Employees are known to Defendants, are readily identifiable, and can be located through Defendants' business and personnel records.

**DEFENDANTS' VIOLATIONS WERE WILLFUL**

84.    Defendants knew they employed Trahan and the other Hourly Employees.

85.    Defendants knew they were subject to the FLSA's overtime provisions.

86.    Defendants knew the FLSA requires them to pay non-exempt employees, including Trahan and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

87.    Defendants knew Trahan and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours via its timekeeping system.

88. Defendants knew Trahan and the other Hourly Employees were non-exempt employees entitled to overtime wages.

89. Defendants knew they paid Trahan and the other Hourly Employees non-discretionary bonuses.

90. Defendants knew these non-discretionary bonuses were required to be, but were not, included in Trahan's and the other Hourly Employees' regular rates of pay for overtime purposes.

91. And Defendants knew the FLSA requires them to pay Trahan and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

92. And Defendants knew they automatically rounded the Hourly Employees' "on the clock" hours to reflect only their prescheduled shifts, even though the Hourly Employees regularly worked beyond their scheduled hours, for its own primary benefit.

93. Defendants' failure to pay Trahan and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

94. Defendants knew they rounded the Hourly Employees' hours to reflect only their prescheduled shifts.

95. Defendants knew the Hourly Employees regularly worked beyond their prescheduled shifts.

96. Defendants knew their conduct violated the FLSA.

97. Defendants knowingly, willfully, and/or in reckless disregard of the FLSA carried out their unlawful bonus pay scheme that deprived Trahan and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

98.     Trahan brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

99.     Defendants jointly violated, and are violating, the FLSA by employing non-exempt employees such as the Hourly Employees in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

100.     Defendants' unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

101.     Accordingly, Defendants owe the Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

102.     Because Defendants knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, Defendants owe the Hourly Employees these wages for at least the past 3 years.

103.     Defendants are also liable to the Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

104.     Finally, the Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### JURY DEMAND

105.     Trahan demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Trahan, individually and on behalf of the other Hourly Employees, seeks the following relief:

- 12 -

a.     An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b.     An Order finding Defendants jointly liable to Trahan and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

c.     A Judgment against Defendants awarding Trahan and the Hourly Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.     An Order awarding attorney's fees, costs, and expenses;

e.     Pre- and post-judgment interest at the highest applicable rates; and

f.     Such other and further relief as may be necessary and appropriate.

Date:   June 8, 2026

Respectfully submitted,

**BUTLER CURWOOD, PLC**

By: */s/ Zev H. Antell*
Harris D. Butler, III VSB No. 26483
Craig J. Curwood VSB No. 43975
Zev H. Antell VSB No. 74634
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Phone: (804) 648-4848
Fax:     (804) 237-0413
harris@butlercurwood.com
craig@butlercurwood.com
zev@butlercurwood.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**

- 13 -

5847 San Felipe St., Suite 2400
Houston, Texas 77057
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR TRAHAN AND
THE HOURLY EMPLOYEES**